Renee MASON, Plaintiff,

v.

The VILLAGE OF BABYLON, New York, Elizabeth A. Meyer, individually and as the Court Clerk of the Babylon Village Court, Laurie Ann McManus, Shield No. 2973, individually and as a Police Officer of Suffolk County New York Police Department, "Jane Doe," Shield No. BP 108, Individually and as a Matron of Suffolk County, New York and "John Doe 1" individually and as a Corrections Officer of Suffolk County, New York and the County of Suffolk, New York, Defendants.

No. CV–98–4894.

United States District Court, E.D. New York.

Dec. 20, 2000.

Leslie Tenzer, Babylon, NY, for Plaintiff.

Nicolini & Paradise by Henry J. Cernitz, Mineola, NY, for Defendants Village of Babylon and Elizabeth Meyer.

Robert J. Cimino, Suffolk County Attorney by Arlene S. Zwilling, Hauppauge, NY, for Defendants Laurie Ann McManus and County of Suffolk.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is a civil rights lawsuit commenced by Plaintiff Renee Mason ("Plaintiff" or "Mason") alleging claims sounding in denial of due process, false arrest and unconstitutional search. Named as defendants are the Village of Babylon ("Babylon" or the "Village"), Elizabeth Meyer, Court Clerk of the Babylon Village Court, Suffolk County Police Officer Laurie Ann McManus ("McManus") and the County of Suffolk (collectively "Defendants").[1]

Plaintiff's claim arises out of her arrest pursuant to a warrant that had been recalled but remained on the active warrant list. Presently before the court are the parties' cross-motions for summary judgment. For the reasons that follow the defense motion to dismiss the claims alleging false arrest and due process violations are granted. Plaintiff's motion for summary judgment as to the illegality of the search is granted. The parties will proceed to trial on the issue of damages attributable to this claim as well as the issues of qualified immunity and municipal liability.

## BACKGROUND

### I. Factual Background

The facts forming the basis of Plaintiff's claims are set forth in Plaintiff's complaint and have been amplified by the deposition testimony taken prior to the making of the motions presently before the court.

### A. Plaintiff's Arrest and the Warrant

On May 8, 1997, Plaintiff was traveling in her car and was pulled over by defendant Police Officer Laurie McManus. Once Plaintiff was pulled over, McManus communicated with a police dispatcher and was informed that there was an outstanding warrant for Plaintiff's arrest. Upon learning of the warrant, McManus took Plaintiff into custody and transported her to the Second Precinct. According to McManus, the arrest was mandatory once the warrant was discovered.

McManus testified that shortly after the arrest she became aware that the warrant upon which the arrest was effected was issued for failure to pay a fine issued in connection with a violation of the Vehicle and Traffic Law, specifically, a broken tail light. Upon the arrest, McManus told Mason that she was being brought to the precinct for traffic violations. McManus testified that at the time of the arrest Mason posed no threat of bodily harm. She further testified that she looked into Mason's car and neither saw nor smelled anything that might be contraband. Finally, she testified that she placed Mason under arrest with no difficulty.

As events unfolded it became clear that the warrant upon which Plaintiff was arrested, which had been issued by the Village Court for the Town of Babylon in October of 1996, had been recalled and was not in effect at the time of the arrest. The recall of the warrant, however, was not known to Officer McManus who relied solely on the information communicated to

---

1. Also named as defendants are "Jane" and "John Doe," described, respectively, as a matron of Suffolk County and a Suffolk County Corrections Officer. Discovery is closed in this matter and Plaintiff has made no effort to identify these defendants. More importantly, however, the statute of limitations has run on Plaintiff's claims (which accrued more than three years ago). Accordingly, even if Plaintiff could identify additional defendants, it is now too late to amend her complaint to assert causes of action against any additional parties. Such claims are therefore, *sua sponte,* dismissed. *Tapia–Ortiz v. Doe,* 171 F.3d 150, 151–52 (2d Cir.1999); *Fulton v. Litwin,* 2000 WL 1159319 *4 (E.D.N.Y. August 10, 2000).

her when informing the police dispatcher of Mason's identity.

The circumstances and procedures governing the recall of warrants in general, and the warrant in this case in particular, were reviewed at the deposition of Defendant Meyer, the Babylon Village Court Clerk. Meyer testified that if an individual came to court to pay an unpaid fine that had resulted in the issuance of a warrant, it was Meyer's practice to give the person a receipt indicating that payment had been made. Meyer further stated that once payment was received, she would telephone the Warrant Control Department of Suffolk County ("Warrant Control") and ask that they recall the warrant.

Meyer explained at her deposition that it was the procedure of her office to place a "warrant recalled" stamp on the copy of the warrant retained at the Babylon Village Court after the telephone call recalling the warrant was made to Warrant Control. The stamp on the warrant at issue here indicated that it had been recalled on October 9, 1996—seven months prior to Plaintiff's arrest. That stamp also indicated that the Babylon Village employee who made the call regarding Mason's warrant spoke to a woman named "Iris" at Warrant Control.

Despite the fact that the stamping of the warrant indicates that Warrant Control was, indeed, called, with respect to the warrant for Plaintiff's arrest, it is clear that the warrant was not cancelled, but remained active. This must have been so because Officer McManus was informed that the warrant was active when she pulled over Mason in 1997. Obviously, some mistake was made with respect to the recall of the warrant. Meyer testified that in the seven years that she had been with the Babylon Village Court, this case was the first time she became aware that a warrant that was requested to be recalled remained active.

## B. *The Search of Plaintiff While in Police Custody*

Upon her arrest, Mason was transported to the Second Precinct. Mason testified as to the following events that transpired there. Upon her arrival at the precinct, Mason told McManus that she wanted to use the bathroom. McManus escorted Mason to the bathroom and conducted a search of Mason prior to allowing her to use the facilities. While the search performed is referred to in Plaintiff's complaint as a "strip search," Plaintiff's deposition testimony makes clear that the search conducted by McManus, as described below, was not a search where Plaintiff was required to remove all of her clothes. Plaintiff was, however, subject to a search aimed at uncovering contraband that may have been concealed in her undergarments.

Upon entering the bathroom, in the presence only of McManus, Plaintiff was frisked and patted down. She was asked to raise her shirt and expose her bra. She was asked to pull out, but not remove, her bra, so as to dislodge anything that might be hidden therein. Plaintiff was also asked to lower her pants to her thighs. She was not asked to remover her underwear, but to reposition it; again to dislodge anything that might have been concealed. Plaintiff was subject to a visual inspection only of the areas she was asked to expose; she was not touched and was patted down only on areas of her body that were covered with clothes.

Plaintiff's complaint alleges that on the night of her arrest she was transferred from the Second Precinct to the Fourth Precinct and held there in a detention area. Plaintiff's complaint alleges that she was subject to "strip searches" upon her arrival at the Fourth Precinct and later, upon her arrival at the Central Islip courthouse. These searches, however, were not conducted by Defendant McManus and Plaintiff has never identified the individuals who allegedly conducted these searches. Plaintiff's testimony indicates,

however, that the search conducted at the Fourth Precinct was similar to the search conducted at the Second Precinct. It appears that the search conducted at the Central Islip courthouse was limited to a "pat down" search.

## II. *Plaintiffs' Complaint*

Plaintiff's complaint states a cause of action pursuant to 42 U.S.C. § 1983. While not clearly articulated, Plaintiff's civil rights claims sound in: (1) a violation of due process (asserted against Babylon and Meyers and stemming from alleged deficiencies in the warrant recall procedure); (2) false arrest (asserted against McManus and Suffolk County stemming from her arrest on the recalled warrant) and (3) unreasonable search (asserted against McManus and Suffolk County based upon the search performed before Plaintiff was permitted to use the bathroom at the Second Precinct).

Plaintiff's claims against Babylon and Meyer assert that actions taken with respect to the recall of the warrant were "careless, negligent, reckless" and that Meyer failed to carry out her duties "to such a degree of care which a reasonably prudent person would have exercised under the same or similar circumstances." Although not specifically set forth in the complaint, Plaintiff appears to argue that the procedures in place at the Babylon Village Court failed to comply with the requirements of due process.

Plaintiff's false arrest claim argues that because the warrant upon which she was arrested had been recalled, there was no probable cause to effect the arrest. Plaintiff's unreasonable search claim alleges that Officer McManus and the County are liable for subjecting Plaintiff to intrusive searches where there was neither probable cause nor reasonable suspicion to believe that Plaintiff was concealing contraband. The County of Suffolk is sought to be held liable on the theory that the searches were performed pursuant to official County policy.

## III. *The Motions for Summary Judgment*

All Defendants move for summary judgment. The Village and Meyer allege that Plaintiff can show nothing more than negligence, at best, in the warrant recall procedure and that such conduct cannot form the basis of a due process violation. The County and Officer McManus seek judgment on the false arrest claim on the ground that no such claim is stated where, as here, the arrest is effected pursuant to a warrant that appeared to be valid to the arresting officer. Finally, the County and Officer McManus seek judgment on the unreasonable search claim on the ground that the searches were not unconstitutional. McManus argues that even assuming the illegality of the search that she performed, she is entitled to qualified immunity and dismissal of the claim. Setting forth the opposite arguments, Plaintiff moves for summary judgment in her favor.

## DISCUSSION

### I. *General Legal Principles*

#### A. *Summary Judgment Standards*

To obtain summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, the party seeking summary judgment must demonstrate that "there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987).

#### B. *Municipal Liability*

■ To establish the liability of entities such as the Village of Babylon and the County of Suffolk, Plaintiff must show that "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal

rights." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 400, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997), quoting, *Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, Plaintiff must show that municipal action was taken with "the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404, 117 S.Ct. 1382.

▮ Where a plaintiff claims that the municipality has caused an employee to make decisions depriving plaintiff of his Constitutional rights, "rigorous standards of culpability and causation must be applied" to ensure that liability is not imposed simply upon a respondeat superior theory. *Brown*, 520 U.S. at 415, 117 S.Ct. 1382. Inadequate training of municipal employees may form the basis of municipal liability in limited circumstances such as the existence of an insufficient training program that applies over time to multiple employees. Continuing adherence to an approach that consistently results in unconstitutional acts by employees may establish such deliberate indifference as to trigger municipal liability. On the other hand, proof only of a one-time negligent administration of a program cannot be relied upon to establish municipal liability. *Id.* at 407–08, 117 S.Ct. 1382.

### C. Qualified Immunity

▮ The doctrine of qualified immunity shields government officials performing discretionary functions from liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Such officials are immune from liability if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known and/or it was objectively reasonable for the official to believe that this was the case. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The objective reasonableness standard was es-

tablished to "permit the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see Mozzochi v. Borden*, 959 F.2d 1174, 1177 (2d Cir.1992).

▮ A law enforcement officer seeking summary judgment on the ground of qualified immunity bears the burden of proving that it was "objectively reasonable" for the defendant to believe that his behavior did not violate plaintiff's clearly established constitutional rights. *Lennon v. Miller*, 66 F.3d 416, 418 (2d Cir.1995) (quoting, *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Objective reasonableness is established where "officers of reasonable competence could disagree as to the legality of the defendant's actions." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). An officer's actions will be found objectively unreasonable, and summary judgment will be denied only if "no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon*, 66 F.3d at 420–21; *see, e.g., Santiago v. Semenza*, 965 F.Supp. 468, 473 (S.D.N.Y.1997) (granting summary judgment on ground of qualified immunity on excessive force claim); *Steiner v. New York*, 920 F.Supp. 333, 339 (E.D.N.Y.1996) (granting summary judgment on claim of lack of probable cause to arrest).

A defendant seeking summary judgment need not show that all reasonable police officers would have acted similarly under the circumstances presented, but only that reasonable officers might disagree as to the legality of the defendant's conduct under the circumstances. If this court determines that the only conclusion that a rational jury could reach is that reasonable officers might differ as to the propriety of defendant's conduct, summary judgment should be granted. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir.1996); *Steiner*, 920 F.Supp. at 338.

## II. *Disposition of the Motions*

### A. *Due Process Claims Against Babylon and Meyer*

#### 1. *Elements of the Claim*

■ Due process has both a procedural and substantive component. Procedural due process requirements are generally satisfied by appropriate notice and an opportunity to be heard. *See Natale v. Town of Ridgefield,* 170 F.3d 258, 262 (2d Cir.1999). Procedures in place "must be reasonable and responsive to the particular situation at hand." *Dillon v. Boyce,* 1995 WL 116476 *3 (E.D.N.Y.1995), citing, *Toure v. United States,* 24 F.3d 444, 445 (2d Cir.1994). Substantive due process, on the other hand, refers not to particular hearing procedures, but circumscribes an "outer limit" on permissible governmental action. *Natale,* 170 F.3d at 263. Substantive due process rights are violated only by conduct "so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale,* 170 F.3d at 263.

#### 2. *Disposition*

■ Plaintiff's claims against Babylon and Meyer allege negligent and reckless procedures in connection with the recall of outstanding warrants. While Plaintiff may find some fault with the existing procedures and, indeed, may have some valid suggestions as to how to improve those procedures, she can point to no facts supporting the notion that the procedure was so recklessly applied or so deliberately indifferent to Plaintiff's rights as to constitute a violation of the Constitution. In view of Myers' testimony that in the seven years she had been with the Village court, the system in place failed on only this single occasion, there is no evidence of an ongoing unconstitutional practice.

At best, Plaintiff has shown a possibility either that a Babylon Village Court employee (not necessarily Meyers) failed to call the appropriate individual at Suffolk County warrant control or that some mistake was made at the County level in failing to properly recall the warrant. Such facts are plainly insufficient to constitute a violation of Plaintiff's Constitutional rights. Accordingly, the court grants summary judgment to the Village of Babylon and Meyers on any claim pursuant to 42 U.S.C. § 1983. To the extent that Plaintiff has any state law claims against these defendants, the court declines to exercise pendent jurisdiction over such claims.

### B. *False Arrest Claim*

#### 1. *Elements of the Claim*

■ The elements of a federal civil rights claim based upon an allegation of false arrest are the same as the elements of a false arrest claim under New York law. *See Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996); *Jenkins v. City of New York,* 1999 WL 782509 * 8 (S.D.N.Y. September 30, 1999), *aff'd,* 216 F.3d 1072 (2d Cir.2000). The elements of such a claim are: (1) defendant had intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged. *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995); *see Weyant,* 101 F.3d at 853.

■ A showing of probable cause to arrest defeats the claim, whether brought pursuant to State or Federal law. *Singer,* 63 F.3d at 118; *Tucker v. Gross,* 39 F.Supp.2d 244, 249–50 (E.D.N.Y.1999). Thus, to prevail on a claim for false arrest, plaintiff must demonstrate the absence of probable cause to arrest. *Labensky v. County of Nassau,* 6 F.Supp.2d 161, 176 (E.D.N.Y.1998), citing *Zanghi v. Incorporated Village of Old Brookville.,* 752 F.2d 42, 45 (2d Cir.1985), *aff'd,* 173 F.3d 845 (2d Cir.1999). Probable cause to arrest exists where officers have knowledge of, or reasonably trustworthy information about, facts and circumstances sufficient to warrant a reasonable belief that an offense has been or is being committed. *Steiner,* 920 F.Supp. at 338.

Where an arrest is effected pursuant to an arrest warrant, a presumption of probable cause is created. *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991); *Jenkins v. City of New York,* 1999 WL 782509 * 8 (S.D.N.Y. September 30, 1999), *aff'd,* 216 F.3d 1072 (2d Cir.2000); *Hibbard v. Gallivan,* 1999 WL 782174 *1 (W.D.N.Y. September 15, 1999). That presumption is defeated only if a plaintiff can show that the arresting officer "knowingly, intentionally or with reckless disregard for the truth," made a false statement upon which the officer issuing the warrant relied. *Id.* In the face of a valid warrant where there is no showing of fraud, misrepresentation or falsification of evidence, there is no claim for false arrest, either under New York law or as a matter of Federal Civil Rights. *Martinetti v. Town of New Hartford Police Department,* 112 F.Supp.2d 251, 252 (N.D.N.Y.2000); *Coakley v. Jaffe,* 72 F.Supp.2d 362, 364 (S.D.N.Y.1999), *aff'd.,* 2000 WL 1552258 (2d Cir.2000).

An arresting officer is entitled to qualified immunity from a claim of false arrest if it was either: (1) objectively reasonable for him to believe that probable cause existed or (2) reasonably competent officers could disagree as to the existence of probable cause. *McSween v. Edwards,* 91 F.Supp.2d 513, 522 (E.D.N.Y.2000), quoting, *Golino,* 950 F.2d at 870.

### 2. *Disposition of the Claim*

Although the warrant upon which Plaintiff was arrested was recalled prior to the arrest, that fact was not known to Officer McManus on the night of Mason's arrest. Indeed, the only information available to the arresting officer at the time of the arrest was communicated to her by the police dispatcher who informed McManus that there was an active warrant for the arrest of Mason. Under these circumstances, it was reasonable for McManus to take Mason into custody.

It matters not that the warrant was for a minor offense. An outstanding warrant required the action taken by McManus. Even assuming that Mason protested the validity of the warrant at the time of the arrest makes no difference. At the very least, McManus is clearly entitled to qualified immunity on the false arrest claim. McManus was informed of an outstanding warrant and acted thereupon. She was under no obligation to do otherwise and it cannot be said that no reasonable officer would have made the same choice under the same circumstances. *See Lennon,* 66 F.3d at 420–21. Defendants' motion for summary judgment on the claim of false arrest is granted.

### C. *Unreasonable Search Claim*

### 1. *Elements of the Claim*

The Constitution requires that searches of individuals, even those arrested or incarcerated, be reasonable under the circumstances. *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The reasonableness of any given search is determined by balancing the need for the search against the "invasion of the personal rights that the search entails." *Id.*

It is the clear law in this circuit that the Fourth Amendment precludes prison officials from performing strip searches of arrestees charged with misdemeanor or minor offenses absent a reasonable suspicion that the person being searched is concealing weapons or other contraband. *Shain v. Ellison,* 53 F.Supp.2d 564, 566 (E.D.N.Y.1999). *See Weber v. Dell,* 804 F.2d 796, 802 (2d Cir. 1986), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); *see also Walsh v. Franco,* 849 F.2d 66, 69–70 (2d Cir.1988).

In *Weber* and *Walsh,* the Second Circuit made clear that strip searches may be justified only by focusing on the particular arrest—whether it be the nature the crime charged or the circumstances surrounding the arrest—and not on factors

relating to the correctional facility. The Second Circuit has specifically rejected the argument that the mixing of arrestees along with the general jail population justifies a blanket strip search policy. Thus, it has been held that "the risk of a misdemeanor arrestee's introducing contraband into the general jail population simply did not warrant a strip search of all arrestees ...." *Walsh,* 849 F.2d at 69.

■ As the foregoing makes clear, any policy authorizing blanket strip searches of inmates charged with misdemeanors, without regard to the nature of the crime charged or any other fact regarding a reasonable suspicion of concealed contraband, is unconstitutional. *Wachtler v. County of Herkimer,* 35 F.3d 77, 81 (2d Cir.1994), quoting, *Weber,* 804 F.2d at 802. A county that is found to have such a policy will be liable for a constitutional violation and, by virtue of the fact that it is a county, cannot claim any defense of qualified immunity. *See Wachtler,* 35 F.3d at 82, citing, *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Moreover, the unconstitutionality of a blanket strip search policy is so well established that, absent a finding of reasonable suspicion, the individual or officer carrying out the policy is not entitled to a qualified immunity defense. *Weber,* 804 F.2d at 803.

■ While the search at issue here was not a full strip search, the principles of reasonableness under the circumstances are equally applicable. Ultimately, the court must apply the *Wolfish* standards and determine whether the nature of the search is balanced by its need. In making this determination, the court considers the crime charged and the facts and circumstances surrounding the arrest, as well as the scope of the search, the manner in which it is conducted, and the place where the search is conducted. *Wolfish,* 441 U.S. at 559, 99 S.Ct. 1861.

At least one court in this circuit has held that the constitutionality of a no-contact strip search, similar to the search at issue here, was enough of an open question to afford the arresting officer qualified immunity. *See Lopez v. City of New York,* 901 F.Supp. 684, 693 (S.D.N.Y.1995). That court also held, however, that the municipality enforcing the policy was not entitled to summary judgment dismissing the claim and, indeed, might be held liable for a Fourth Amendment violation after consideration of the facts and circumstances surrounding the search at issue. *Id.*

### 2. *Disposition of the Claim*

■ The deposition testimony cited above makes clear that Plaintiff was not subject to a full strip search. Instead, she was asked to lift her shirt, lower her pants and, as put by the County, "rearrange her undergarments." The County makes much of this distinction, arguing that it leads to the inescapable conclusion that the search did not violate the Fourth Amendment. The court disagrees.

When seeking to justify the search at issue, the County fails to engage in the reasonableness inquiry and the balancing required by the Supreme Court of the United States and the Second Circuit. As noted, this approach requires consideration of the crime charged and the facts and circumstances surrounding the arrest as well as the scope of the search, the manner in which it is conducted, and the place where the search is conducted. *Wolfish,* 441 U.S. at 559, 99 S.Ct. 1861.

Plaintiff here was arrested on an outstanding warrant for a traffic violation. Clearly, the nature of crime charged cannot be relied upon to raise any suspicion whatever that Plaintiff was concealing contraband sufficient to justify a search of her undergarments. Nor can the search be justified by reference to any facts or circumstances surrounding Plaintiff's arrest. Officer McManus testified regarding no conduct that led to any suspicion, reasonable or otherwise, that Plaintiff was concealing contraband either on her person or in her car. While they would probably be

insufficient in any event, the County has not tried to justify the search conducted based upon any institutional concern. In short, the court finds absolutely no facts to justify the intrusive, albeit not full "strip," search conducted. Under the circumstances here, the search of Plaintiff violated the Fourth Amendment.

Finding that the search failed to comport with the reasonableness requirements of the Fourth Amendment does not, however, end the matter. The court must consider whether Officer McManus is entitled to qualified immunity. Additionally, the court must consider whether the search was conducted pursuant to a custom or policy of the County sufficient to justify the imposition of liability pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The court concludes that the record is insufficient to decide these issues. The parties have submitted neither documents nor testimony indicating the County policy, at the time of Mason's arrest, regarding searches of individuals taken into custody. While there is testimony that McManus was acting pursuant to "standard procedure," the basis for this characterization is unclear. Rather than decide the remaining issues of immunity and municipal liability on the basis of this insufficient record, the court reserves decision on these matters for trial.

### CONCLUSION

For the reasons set forth above, The court grants the defense motion for summary judgment regarding the claim of false arrest and dismisses this claim as against all defendants. Additionally, all claims against the Village of Babylon and Elizabeth Meyers are dismissed. These defendants are no longer a part of this case.

The court holds, as a matter of law, that the search conducted upon Plaintiff violated the Fourth Amendment to the United States Constitution. The court reserves for trial of this matter the issues of damages, qualified immunity and municipal liability.

SO ORDERED.